```
 1  KAREN P. HEWITT
    United States Attorney
 2  ALESSANDRA P. SERANO
    Assistant U.S. Attorney
 3  California State Bar No. 204796
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, CA 92101-8893
 5  Telephone: (619) 557-7084

 6  Attorneys for Plaintiff
    United States of America
 7
```

|  |  |
|---|---|
| 8 | UNITED STATES DISTRICT COURT |
| 9 | SOUTHERN DISTRICT OF CALIFORNIA |

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2984-BTM |
|---|---|---|
| Plaintiff, | ) | Date: March 28, 2008 |
| | ) | Time: 11:30 a.m. |
| v. | ) | |
| | ) | STATEMENT OF FACTS AND |
| FELIX MOJICA-PERALTA, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| Defendant. | ) | GOVERNMENT'S MOTIONS <u>IN LIMINE</u> |
| | ) | AND MOTIONS TO: |
| | ) | |
| | ) | (1) EXCLUDE ALL WITNESSES EXCEPT CASE AGENT; |
| | ) | (2) PROHIBIT REFERENCE TO WHY DEFENDANT REENTERED; |
| | ) | (3) PROHIBIT REFERENCE TO PRIOR RESIDENCY; |
| | ) | (4) PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION/POOR RECORD KEEPING BY INS; |
| | ) | (5) PROHIBIT REFERENCE TO FINANCES, EDUCATION, HEALTH AND PUNISHMENT; |
| | ) | (6) PRECLUDE EVIDENCE OF DURESS AND NECESSITY; |
| | ) | (7) ADMIT EXPERT TESTIMONY; |
| | ) | (8) PRECLUDE EXPERT TESTIMONY BY DEFENSE; |
| | ) | (9) ADMIT A-FILE DOCUMENTS; |
| | ) | (10) ADMIT 609 EVIDENCE; |
| | ) | (11) RENEWED MOTION FOR RECIPROCAL DISCOVERY; |
| | ) | (12) ALLOW ATTORNEY CONDUCTED VOIR DIRE; |
| | ) | (13) PROHIBIT SELF-SERVING HEARSAY. |

# I

# STATEMENT OF FACTS

### A. Procedural History

A federal grand jury returned a one count indictment on October 31, 2007, charging Defendant with being an alien found in the United States after deportation, in violation of Title 8, United States Code, Section 1326.

### B. The Instant Offense

On October 2, 2007, Border Patrol Agent Quillin was patrolling the area of Rattlesnake Ridge south of Old Highway 80, approximately 20 miles east of the Tecate Port of Entry and approximately 2 miles north of the international border. This area is commonly used by illegal aliens to further their entry into the United States. At approximately 8:00 a.m., Agent Quillin responded to a seismic intrusion device where he observed fresh footprints for a group of people. He followed the prints when he encountered a group of six people, one of whom was the Defendant, Felix Mojica-Peralta.

Agent Quillin questioned each person about their citizenship and immigration status. Each person, including the Defendant, stated that they were Mexican citizens with no documents allowing them to enter the United States. All individuals were transported to the Campo Border Patrol Station for further processing.

All six individuals were processed at the station. Record checks revealed that Defendant had a criminal history including a conviction for PC §261, Rape, from Fresno, California. Agents were processing many people and did not review Defendant's records until that afternoon. At approximately 3:20 p.m. that same day, Agent Plasencia along with Agent Lopez advised Defendant that his administrative rights no longer applied and read Defendant his Miranda rights. Defendant acknowledged his Miranda rights and agreed to make a statement. He said that he was a Mexican citizen who knowingly entered the United States illegally by climbing over the boundary fence earlier that morning. He stated he was enroute to Fresno, California. He admitted he had no documents to enter the United States. He admitted that his criminal and immigration history was in fact his. The interview was electronically recorded.

### C. Prior Criminal and Immigration History

Defendant was ordered removed via administrative order on May 7, 2002. He was subsequently removed from the United States on May 23, 2002 and again on May 11, 2004.

On December 15, 1999, Defendant was convicted of felony rape under California PC §261(a)(2) in Fresno County, California and sentenced to three years custody.

## II

## ARGUMENT

### A. The Court Should Exclude Witnesses During Trial With The Exception of the United States' Case Agent

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615. The Government does not oppose a defense request to have a defense investigator present during the trial.

### B. The Court Should Prohibit Reference To Why Defendant Reentered the United States

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to reenter. The Court should preclude him from doing so.

Evidence of <u>why</u> Defendant violated § 1326 is irrelevant to the question of <u>whether</u> he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.

Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402.

The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980) is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. <u>Id.</u> at 491. On appeal, she argued that the district court erred in granting the government's

motions in limine to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," (id. at 492), and the Ninth Circuit affirmed. Similarly here, the reasons why Defendant attempted to reenter the United States and his belief that he was entitled to do so are irrelevant to any fact at issue in this case.

### C. The Court Should Prohibit Reference To Prior Residency

If Defendant seeks to introduce evidence of any former residence in the United States, legal or illegal, at trial, the Court should preclude him from doing so. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, the district court granted the United States' motion in limine to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993) overruled on limited and unrelated grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996). He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id.

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion in limine to introduce evidence of what she termed "defendant facto" citizenship as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of: (1) involuntariness of initial residence; (2) continuous residency since childhood; (3) fluency in the English language; and (4) legal residence of immediate family members. Id. at 712.

The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under Section 1326." Id. at 712. The court also noted that admission of the evidence would run "contrary to the intent of Congress." Id. In particular, it noted that, under

Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. Id. at 712-13. The factors which the defendant relied upon to establish her "defendant facto" citizenship are "among the factors the Attorney General considers in deciding whether to exercise this discretion." Id. at 713.

Thus, the court reasoned, "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented to the jury are ones that she could have presented the first time she was deported." Id. Therefore, it held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries." Id. (emphasis added).

### D. The Court Should Prohibit Reference to Poor Record Keeping or Document Destruction

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records. Specifically, the United States seeks to preclude reference to argument that: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to the Defendant. Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by the Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142, 1147 (9th Cir. 2004) (affirming District Court Judge Lorenz' rulings to deny such testimony in a § 1326 case).

The Ninth Circuit recently held in Rodriguez-Rodriguez that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. The Ninth Circuit explicitly rejected defense counsel's claim that the District Court's exclusion of the anticipated testimony violates the Confrontation Clause. Id. Instead, it declared that "[n]one of the information is relevant on the facts of this case, because it is uncontested that Rodriguez never made any application

to the INS or any other federal agency." Id. Thus, absent at a minimum a proffer that the Defendant had in fact applied for or obtained permission to enter or remain in the United States in this instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and properly excludable.

Additionally, the United States seeks to preclude reference to shredding of immigration documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case No. SA CR 03-26-AHS (C.D. Cal. 2003) **unless** the Defendant testifies or offers evidence that: (1) he did in fact apply for permission to reenter the United States from the Attorney General, or his designated successor, the Secretary of the Department of Homeland Security ;and (2) that such a document would have been stored at that particular facility where the shredding occurred in the Randall case.

Any reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence offered by the Defendant at trial that he did in fact seek permission to reenter the United States. See Fed. R. Evid. 401-403. Moreover, even if the Defendant offers evidence that he did apply, there must be some showing that his application would have been stored at the facility which is the subject of the Randall case during the time of the alleged shredding of the documents, namely from February to April 2002. Otherwise, it is immaterial and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service Center in Laguna Niguel, California, because the Defendant did not apply, or if he did apply, his application was not stored there, and therefore, could not have been effected.

Such testimony as well as any such statements asserted in Defendant's opening statement or closing argument would be unfairly prejudicial to the United States and likely to cause confusion to the jury because such unsupported blanket allegations or references of document destruction or poor record keeping without any showing by the Defendant that he applied for permission to reenter would be misleading. Accordingly, the United States seeks an order precluding such argument.

### E. The Court Should Prohibit Reference To Defendant's Health, Finances, Education and Potential Punishment

Evidence of, and thus argument referring to, Defendant's health, finances, education and potential punishment is inadmissible and improper. This includes reference to the current offense as a felony.

Federal Rule of Evidence 402 provides that "Evidence which is not relevant is not admissible." Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003 Edition).[1/]

Reference to Defendant's health, finances, education and potential punishment may be relevant at sentencing. However, in an attempted reentry trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

### F.     The Court Should Preclude Evidence of Duress and Necessity

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

A defendant must establish three elements to present a duress defense:

(1)     an immediate threat of death or serious bodily injury;

(2)     a well-grounded fear that the threat would be carried out; and

(3)     lack of a reasonable opportunity to escape the threatened harm.

United States v. Solorzano-Rivera, 368 F.3d 1073, 1080, fn 3 (9th Cir. 2004) citing United States v. Shryrock, 342 F.3d 948, 987 (9th Cir. 2003). If Defendant fails to make a threshold showing as to each and every element of the defense, the defense is precluded from argument or comments relating to such a defense. Bailey, 444 U.S. at 416. If defendant does make an adequate showing of each of the three elements, it is the defendant's burden to prove duress in a 1326 prosecution, not the Government's burden. United States v. Solorzano-Rivera, 368 F.3d at 1080 (found in case under §1326); United States v. Leal-Cruz, 431 F.3d 667, 673 (9th Cir. 2005)(attempted illegal entry under §1326).

---

[1/]     Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

Likewise, in order for a defendant to present a necessity defense, he must establish the existence of four elements:

    (1)    that he was faced with a choice of evils and chose the lesser evil;

    (2)    that he acted to prevent imminent harm;

    (3)    that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

    (4)    that there was no other legal alternatives to violating the law.

See United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1993); United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195. "Where the evidence, even if believed, does not establish all of the elements of a defense, however, the trial judge need not submit the defense to the jury. Dorrell, 758 F.2d at 430 (affirming the trial court's ruling not to permit defendant to present evidence because he failed to make a prima facie showing of necessity). Necessity is based on a real emergency, not on several choices of action. Id.; United States v. Contento-Pacheco, 723 F.2d 691, 693-5 (9th Cir. 1984) (acts arising from human coercion and not physical forces may not be considered necessity).

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**G.**    **The Court Should Admit Expert Testimony**

At trial, the United States intends to offer testimony of a fingerprint expert to identify the Defendant as the person who was previously deported. Such expert testimony should be admitted to assist the jury in understanding that this Defendant is an alien who was found in the United States after having been deported. On January 25, 2008, pursuant to Federal Rule of Evidence 16(a)(1)(G), the United States provided written notice to Defendant.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

### H.     The Court Should Preclude Any Expert Testimony By Defense Witnesses

The United States has made a request from the Defendant for reciprocal discovery. It is permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. While defense counsel may wish to call an expert to testify, Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist

the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

### I. The Court Should Admit A-File Documents

The United States intends to offer documents from the "A-File" maintained by the Department of Homeland Security and its predecessors that corresponds to Defendant's name in order to establish Defendant's alienage, prior deportations, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General or his designated successor, the Secretary of the Department of Homeland Security. The documents are self-authenticating "public records," or, alternatively, "business records." See Fed. R. Evid. 803(8)(B) and 803(6); United States v. Loyola Dominguez, 125 F.3d 1315 (9th Cir. 1997). The Certificate of Nonexistence proves the absence of a public record and is therefore not excluded by the hearsay rule. See FRE 803(10) and 902(4); United States v. Cervantes-Flores, 421 F.3d 825, 832-34 (9th Cir. 2005); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-43 (9th Cir. 2000).

At trial, although not expected to give expert opinions based upon specialized knowledge, a Senior Border Patrol Agent will be called to testify regarding documents contained in Defendant's A-File. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".) He or she will testify regarding the purpose of the A-File, what documents are contained within the A-File and what those documents mean. Although not required, Defendant was provided notice of the United States' intent to have such a witness at trial.

### J. The Court Should Admit Rule 609 Evidence

Federal Rule of Evidence 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the

> probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed. R. Evid. 609(a) (emphasis added).

The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, Defendant was convicted of California Penal Code §261, rape, and sentenced to three years custody in January 2000. Based on this conviction, at least four out of the five Browne factors weigh heavily in favor of admissibility. First, the impeachment value of Defendant's felony conviction is high. Defendant's felony conviction casts doubt on Defendant's honesty, and therefore has significant impeachment value. Second, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that he had received the permission of the United States Attorney General or Secretary of the Department of Homeland Security to reenter the country. Third, because such defenses could only plausibly be developed through the Defendant's own testimony, his credibility in asserting such alleged facts would be central to the case. Finally, the Browne factors regarding subsequent criminal history, also tend to lean towards admissibility, and the probative value of admitting Defendant's prior felony convictions for purposes of impeachment remains high relative to whatever unfair prejudicial effect it might have. Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by means of an appropriate jury instruction.

Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony conviction under Rule 609 if he elects to testify at trial.

**K.    Renewed Request for Reciprocal Discovery**

The United States renews its request for reciprocal discovery. As of the date of the preparation of these motions, Defendant has produced discovery relating to his medical records. The United States

requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**L.     Attorney Conducted Voir Dire**

The Government respectfully requests the Court to allow attorney conducted voir dire in an amount of time equal to the Defendant. The Government will defer to the Court on an appropriate amount of time.

**M.     Prohibit Self-Serving Hearsay**

The Defendant must be precluded from introducing his own statements through the testimony of another witness, the opening statement of counsel, or argument by counsel. Any such attempt would be impermissible because those statements are hearsay. While the Government may use the statements of a defendant against each under Federal Rule of Evidence 801(d)(2) (admission by party-opponent), this Rule may not be relied upon by the Defendant because he is not the proponent of the evidence and the evidence is not being offered against him (but rather on his behalf). Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination by the United States. <u>See</u> <u>e.g.</u>, <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1987).

Nor can Defendant rely on Rule 801(d)(1)(B), which provides that a statement is not hearsay if:

> The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

A prior consistent statement is not admissible if it is introduced in the absence of impeachment. <u>See</u> <u>United States v. Navarro-Varelas</u>, 541 F.2d 1331, 1334 (9th Cir. 1976) (appellant offered to introduce and play tape recording of interview of appellant and DEA agent to reinforce appellant's credibility). Moreover, even if the declarant's testimony has been impeached, prior consistent statements are not admissible if the declarant had motive to give false information at the time that the prior out-of-court statement was made. <u>See</u> <u>United States v. DeCoito</u>, 764 F.2d 690, 694 (9th Cir. 1985) (declarant's prior consistent statement not admissible for purposes of rehabilitation if declarant had

motive to lie to avoid prosecution when prior statement was made); United States v. Rohrer, 708 F.2d 429, 433 (9th Cir. 1983) (diagram drawn by declarant not admissible as prior consistent statement because declarant had motive when diagram was made to fabricate, that is, driving better leniency bargain with the government).

Next, Defendant cannot rely on Rule 803(3), which provides that the hearsay rule does not exclude then existing mental, emotional, or physical condition. See Fed.R.Evid. 803(3). Addressing this issue in the context of a "derivative entrapment" defense, the Ninth Circuit affirmed the trial court's exclusion of testimony by a witness that the defendant had told the witness that the defendant was afraid of government agents. The court relied on the language emphasized above in Rule 803(3), holding that the rule did not except the witness's testimony from the hearsay rule. See United States v. Emmert, 829 F.2d 805, 809-10 (9th Cir. 1987).

Finally, Defendant cannot argue "rule of completeness" to admit certain statements through an agent that the agent may not testify to on direct. First, as discussed above, such statements would be inadmissible hearsay. Next, the rule of completeness concerns written, not oral statements.

Defendant cannot introduce his own statements through the testimony of another witness or by improper reference during opening statements. Defendant is free to provide a statement from the witness stand where he would properly be subject to cross-examination.

## V

## CONCLUSION

For the above stated reasons, the United States respectfully requests that its motions in limine be granted.

DATED:     March 14, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/Alessandra P. Serano

ALESSANDRA P. SERANO
Assistant U.S. Attorney